**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| PAULA JACKSON-HILL, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>STEVEN MADDEN, LTD.; STEVEN MADDEN RETAIL, INC.; and DOLCE VITA FOOTWEAR, INC.<br><br>      Defendants. | **CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL<br><br>Case No. 26-cv-4711 |

Plaintiff Paula Jackson-Hill, individually and on behalf of all others similarly situated, brings this class action suit for damages and equitable relief against Defendants Steven Madden, Ltd., Steven Madden Retail, Inc., and Dolce Vita Footwear, Inc. ("Defendants" or "Steve Madden"). Plaintiff alleges the following based upon personal information as to allegations regarding themselves, and based upon the investigation of their counsel and information and belief as to all other allegations:

### NATURE OF THE ACTION

1. Steve Madden designs, sources, and markets footwear, accessories, and apparel.

2. Beginning in February 2025, President Trump issued a series of executive orders invoking the International Emergency Economic Powers Act ("IEEPA") to impose new and significant tariffs ("Subject Tariffs") on imports from nearly every foreign country, including those from which Steve Madden sources its products.

3. Following the imposition of Subject Tariffs, Chief Executive Officer Edward Rosenfeld publicly stated that Steve Madden would implement price increases across its product

lines to manage the financial impact of the Subject Tariffs. Consistent with these statements, retail prices for Steve Madden increased in the United States as a result of the tariffs. Plaintiff and the Class purchased Steve Madden products after these price increases took effect and, as a result, paid higher prices reflecting these tariff-related adjustments ("Tariff Costs").

4.    At the same time, Steve Madden challenged the legality of the Subject Tariffs in the United States Court of International Trade (CIT), seeking to halt enforcement of the tariff orders and obtain refunds of the duties it paid because of the Subject Tariffs.

5.    In demanding a refund for duties paid because of the Subject Tariffs, Steve Madden did not acknowledge the consumers to whom Steve Madden had passed on the economic burden of those duties through Tariff Costs. The case before the Court of International Trade was stayed pending the Supreme Court's resolution of *V.O.S. Selections, Inc. v. Trump*, in which businesses challenged the lawfulness of the Subject Tariffs. On February 20, 2026, the Supreme Court held that the Subject Tariffs were unlawful. *Learning Res., Inc v. Trump*, 146 S.Ct. 628 (2026).

6.    Despite seeking an order entitling it to a refund of its duties collected as a result of the Subject Tariffs, Steve Madden continues to collect and has not refunded the Tariff Costs it collected from consumers. Upon the determination that the Subject Tariffs were unlawful, giving rise to Steve Madden's right to receive the duties it paid under the unlawful tariff scheme, Steve Madden is likewise obligated to return the corresponding Tariff Costs collected from Plaintiff and Class members.

7.    Steve Madden's retention of those costs unjustly profits Steve Madden at the expense of the consumers.

8.    Accordingly, Plaintiff, on behalf of herself and the estimated thousands or millions of similarly situated consumers, seeks to ensure that her and the proposed Classes' payment of the

illegal Subject Tariffs are returned and therefore demand monetary, equitable, injunctive, and declaratory relief.

## THE PARTIES

9.     Plaintiff Paula Jackson-Hill is domiciled in Georgia. On January 24, 2026, Ms. Jackson-Hill purchased the Levity Multi Sandals for $79.99 from Steve Madden.

10.     Defendant Steven Madden, Ltd. became a publicly traded company in December 1993. Steven Madden, Ltd. was incorporated in the state of New York on July 9, 1990, and reincorporated under the same name in the state of Delaware.[1] Steven Madden, Ltd.'s principal place of business is in Long Island City, New York. It owns several brands, including Steve Madden, Kurt Geiger London, Dolce Vita, Betsey Johnson, Carvela, Blondo, GREATS and Anthony Thomas Melillo (ATM). It also licenses footwear, handbags, and other accessories for the Anne Klein brand. Steven Madden, Ltd.[2]

11.     Defendant Steven Madden Retail, Inc. is a New York corporation with its principal place of business in Long Island City, New York. Steven Madden Retail, Inc. is a wholly-owned subsidiary of Steven Madden, Ltd. Steven Madden Retail, Inc. operates Steven Madden, Ltd.'s direct-to-consumer operations for Steve Madden, Kurt Geiger, Carvela, Dolce Vita, and ATM full-price retail stores, Steve Madden, Kurt Geiger and Carvela outlet stores, directly-operated concessions in international markets, and directly-operated e-commerce platforms.

12.     Defendant Dolce Vita Footwear, Inc. is a Washington corporation with its principal place of business in Long Island City, New York. Dolce Vita Footwear, Inc. is also a wholly-owned subsidiary of Steven Madden, Ltd.

---

[1] Steve Madden, *Company Profile*, https://investor.stevemadden.com/company-profile (last visited Jun. 10, 2026).

[2] *Id.*

**JURISDICTION AND VENUE**

13.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs; more than 100 Class members are involved; and many members of the proposed Classes are citizens of different states than the Defendants.

14.    This Court has personal jurisdiction over Defendants because they are headquartered in this District, it committed the acts alleged herein in New York, regularly conducts business in this District, and has extensive contacts with this forum, including by selling and shipping its products to consumers in this District.

15.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District and Defendants transact substantial business in this District.

**FACTUAL ALLEGATIONS**

16.    Steve Madden is a global fashion and footwear company that designs, sources, and markets footwear, accessories, and apparel.[3] Steve Madden has a hybrid business model that depends on wholesale, direct-to-consumer, and licensing revenue. To that end, Steve Madden manufactures apparel, accessories, and footwear and distributes those products through its retail and e-commerce outlets, where it sells them to consumers.

17.    Steve Madden owns some of the most well-known fashion brands including Steve Madden, Kurt Geiger London, Dolce Vita, Betsey Johnson, Carvela, Blondo, and Anthony Thomas Melillo (ATM).

---

[3] *Id.*

18.    Steve Madden owns and controls the direct-to-consumer outlets for these brands through brick-and-mortar retail stores and e-commerce websites. Steve Madden also directly operates brick-and-mortar retail stores and e-commerce websites.

19.    Steve Madden also licenses footwear, handbags, and other accessories for the Anne Klein brand and designs and sources products under private label brand names for various retailers.[4]

20.    Their wholesale distribution includes department stores, mass merchants, off-price retailers, shoe chains, online retailers, national chains, specialty retailers, and independent stores. In addition, Steve Madden licenses certain brands to third parties for the marketing and sale of certain products in the apparel, accessory, and home categories.

21.    By its own admission, Steven Madden, Ltd. is an importer of merchandise into the United States subject to the challenged Subject Tariffs described below.[5]

**I.    President Trump orders a series of tariffs.**

22.    Beginning in February 2025, President Trump issued a series of executive orders imposing new tariffs under the International Emergency Economic Powers Act (IEEPA), each tied to a declared national emergency.

23.    On February 1, 2025, President Trump issued three orders directed at Mexico, Canada, and China, collectively referred to as the "Trafficking Tariff Orders."

24.    The executive order directed at Mexico imposed an additional 25 percent tariff on the import of goods from Mexico.[6]

---

[4] *Id.*

[5] Complaint, *Steven Madden, Ltd. et al v. U.S. Customs and Border Protection et al*, No. 1:25-cv-00793 (Ct. Int'l Trade Dec. 19, 2025), Dkt. No. 2.

[6] Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025).

25.    The executive order directed at Canada imposed a 25 percent tariff on the import of goods from Canada, with certain exceptions.[7]

26.    The executive order directed at China imposed an additional 10 percent *ad valorem* tariff on the import of goods from China on top of existing duties.[8] Through a series of amendments to this executive order, President Trump increased the tariff on the import of goods from China to 20%.[9]

27.    On April 2, 2025, President Trump issued a separate order—the "Reciprocal Tariff Order"—declaring U.S. trade deficits a national emergency.[10] Effective April 9, this order imposed a 10% baseline tariff on nearly all imports and added higher, country-specific "reciprocal" tariffs on 57 countries ranging from 11% to 50%.[11]

28.    Within days, China imposed retaliatory tariffs and the President raised the reciprocal tariff on China from 34% to 84%, and the next day increased it again to 125%, while temporarily suspending elevated tariffs for other countries.[12] When combined with the trafficking tariff, most Chinese imports now faced a minimum 145% tariff.

---

[7] Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025).

[8] Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025).

[9] Exec. Order No. 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025); Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025).

[10] Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025).

[11] *Id.*

[12] Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025); Exec. Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15509 (Apr. 14, 2025); Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment* (Apr. 9, 2025) 90 Fed. Reg. 15625 (Apr. 15, 2025).

## II.    Steve Madden charges consumers more because of these tariffs.

29.    Although they may be nominally directed extraterritorially, the increased costs created by the Subject Tariffs are borne almost entirely by U.S. importers and consumers.[13] Researchers studying recent tariffs estimate that approximately 96% of the tariff cost burden is passed through to American consumers.[14]

30.    In its Quarterly Report on Form 10-Q filed with the Securities and Exchange Commission on May 9, 2025, Steve Madden admitted that the Subject Tariffs impacted "jurisdictions where we source our products, including China, Cambodia, Vietnam, Brazil, India, Bangladesh, and various other countries."[15]

31.    During the 2025 fiscal year, the United States accounted for approximately 66.2% of Steve Madden's global sales.[16] In its 2026 Q1 Report on Form 10-Q filed with the SEC on May 8, 2026, Steve Madden revealed that it paid "$90,192 of IEEPA tariffs in connection with the importation of merchandise into the United States" between February 2025 and February 2026.[17]

32.    While importers must pay the Subject Tariffs at the border, wholesalers, manufacturers, and retailers all face a choice: whether to absorb the burden of the Subject Tariffs or to pass that burden on to their customers.[18] In most cases, including in the case of Steve Madden,

---

[13] Julian Hinz, et al., *America's Own Goal: Who Pays the Tariffs?*, Kiel Inst. for the World Econ. (Jan. 19, 2026), https://www.kielinstitut.de/fileadmin/Dateiverwaltung/IfW-Publications/fis-import/92fb3f30-07b8-4dcf-b2bc-fbefb831f1a1-KPB201_EN.pdf .

[14] *Id.*

[15] Steven Madden, Ltd., Quarterly Report (Form 10-Q) (filed May 9, 2025), available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0000913241/000162828025024142/shoo-20250331.htm#fact-identifier-510.

[16] Steven Madden, Ltd., Annual report which provides a comprehensive overview of the company for the past year (10-K) (filed March 2, 2026), available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0000913241/000162828026012995/shoo-20251231.htm.

[17] Steven Madden, Ltd., Quarterly Report (Form 10-Q) (filed May 8, 2026), available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0000913241/000162828026032774/shoo-20260331.htm.

[18] *Id* at 7.

the burden of tariffs is eventually passed through to U.S. consumers through retail price increases.[19] A Goldman Sachs report released in August 2025 estimates that U.S. consumers are "shouldering two-thirds of President Trump's new tariff costs."[20]

33.    In a May 2025 survey of businesses in the New York-New Jersey region conducted by the Federal Reserve Bank of New York, three-quarters of both manufacturing and service businesses facing tariff-induced cost increases reported they passed along at least some of these higher costs to their customers by raising prices.[21] Among those businesses, 40% of manufacturers reported passing along greater than 75% of the tariff-induced cost to their customers.[22]

34.    Similarly, the Federal Reserve Bank of Dallas recently found that the Subject Tariffs increased consumer prices and that "pass-through from the 2025 tariffs is effectively complete," confirming that the costs of the tariffs were ultimately borne by purchasers through increased prices.[23]

35.    The Dallas Federal Reserve further explained the impact of tariff collections on Personal Consumption Expenditures (PCE), an economic measure of consumer spending on goods and services in the U.S. economy.  Its findings explained that the Subject Tariffs "boosted core goods PCE inflation by approximately 2.2 percentage points" and increased overall core PCE inflation by approximately 0.8 percentage points, reflecting widespread downstream price

---

[19] *Id.*

[20] Nick Lichtenberg, Goldman Sachs doubles down on tariff research that infuriated Trump, saying average Americans will bear two-thirds of the costs, FORTUNE (Aug. 13, 2025), https://fortune.com/2025/08/13/goldman-sachs-tariffs-donald-trump-david-solomon-dj/.

[21] Jaison R. Abel, et al., *Are Businesses Absorbing the Tariffs or Passing Them On to Their Customers?*, Fed. Rsrv. Bank of N.Y. (June 4, 2025), https://libertystreeteconomics.newyorkfed.org/2025/06/are-businesses-absorbing-the-tariffs-or-passing-them-on-to-their-customers/.

[22] *Id.*

[23] Ron Mau & Tucker Smith, Effects of Realized Tariff Changes on PCE Prices Peaked in First Quarter 2026, Fed. Rsrv. Bank of Dall. (May 5, 2026), available at: https://www.dallasfed.org/research/economics/2026/0505-mau.

increases imposed on consumers as a result of businesses passing Tariff Costs through the supply chain.

36.     These observations verify that the Subject Tariffs functioned as a direct economic burden on consumers since businesses responded to the Subject Tariffs by increasing prices charged to end purchasers, rather than internally absorbing the additional costs.

37.     Steve Madden's actions exemplify this process.

38.     In its Court of International Trade complaint, Steve Madden alleges that it paid duties imposed by the Subject Tariffs on a continuous basis.[24]

39.     As early as May 7, 2025, Steve Madden stated that it would pass along the cost of the Subject Tariffs to its customers. On a Q1 earnings call, Steve Madden Chairman and CEO Edward Rosenfeld discussed the company's selectively raise prices, stating that "there are goods that we're not raising the prices at all, and there are goods we're raising the prices as much as 20%."[25] He then estimated that the price increases would be "around 10% on average."[26] Steve Madden implemented these measures not only in response to tariffs on directed at China, but also "because of the additional cost in the other countries which includes the 10[%] baseline tariff."[27]

40.     By July 30, 2025, Steve Madden confirmed it had already "started to layer these prices" and implement the increases in the United States but that the effects of these adjustments

---

[24] Complaint at 11-12, *Steve Madden*, *supra* note 6.

[25] Investing.com, *Earnings call transcript: Steve Madden Q1 2025 Beats EPS Forecasts, Stock Surges*, Investing.com (May 7, 2025), https://www.investing.com/news/transcripts/earnings-call-transcript-steve-madden-q1-2025-beats-eps-forecasts-stock-surges-93CH-4028871.

[26] *Id*.

[27] *Id*.

would be clearer "once we get fully into the fall season."[28] On the Q2 earnings call, Rosenfeld reaffirmed the average price increase of 10%.[29]

41.    Additionally, Steve Madden disclosed in its Quarterly Report on Form 10-Q filed with the SEC on August 5, 2025, that "tariff-related tensions" had caused them to "implement selective pricing and cost containment actions to help manage revenue and margin pressures."[30]

42.    Steve Madden's Tariff Costs are apparent in retail price increases for its products, which closely follow the imposition of the Subject Tariffs and Steve Madden's public statements. The following examples are reconstructed price histories of Steve Madden's retail prices on its website, www.stevemadden.com:

| HOLLY BLACK Boots[31] | | | |
|---|---|---|---|
| Nov. 25, 2024 | Mar. 29, 2025 | | Feb. 2, 2026 |
| $99.95 | $109.95 | | $109.95 |
| BERKLEIGH BLACK Boots[32] | | | |
| Nov. 25, 2024 | Mar. 29, 2025 | May 29, 2025 | Feb. 2, 2026 |
| $129.95 | $129.95 | $139.95 | $129.95 |

---

[28] Seekingalpha.com, *Steven Madden, Ltd. (SHOO) Q2 2025 Earnings Call Transcript*, Seekingalpha.com (Jul. 30, 2025), https://seekingalpha.com/article/4806523-steven-madden-ltd-shoo-q2-2025-earnings-call-transcript.

[29] *Id*.

[30] Steven Madden, Ltd., Quarterly Report (Form 10-Q) (filed August 5, 2025), available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0000913241/000162828025037646/shoo-20250630.htm.

[31] https://web.archive.org/web/20241125075752/https://www.stevemadden.com/collections/womens-boots, https://web.archive.org/web/20250329205225/https://www.stevemadden.com/collections/boots-booties, https://web.archive.org/web/20260202034206/https://www.stevemadden.com/collections/womens-boots

[32] https://web.archive.org/web/20241125075752/https://www.stevemadden.com/collections/womens-boots, https://web.archive.org/web/20250329205225/https://www.stevemadden.com/collections/boots-booties, https://web.archive.org/web/20250529225255/https://www.stevemadden.com/collections/boots-booties, https://web.archive.org/web/20260202034206/https://www.stevemadden.com/collections/womens-boots

| HAYDN COGNAC LEATHER Sandals[33] | | | |
|---|---|---|---|
| Nov. 30, 2024 | May 13, 2025 | June 22, 2025 | Feb. 2, 2026 |
| $59.95 | $69.95 | $69.95 | $69.95 |
| MAIVEN TAUPE SUEDE Sandals[34] | | | |
| Nov. 28, 2024 | Mar. 29, 2025 | May 17, 2025 | Feb. 9, 2026 |
| $99.95 | $109.95 | $109.95 | $109.95 |

43.     The following examples are reconstructed price histories of Dolce Vita Footwear, Inc.'s retail prices on its website, https://www.dolcevita.com/:

| Carel High Heels True White Satin[35] | | | |
|---|---|---|---|
| Dec. 3, 2024 | Mar. 17, 2025 | Aug. 19, 2025 | May 21, 2026 |
| $130 | $130 | $150 | $150 |
| Kamra Pearl Mid Heels True White Satin[36] | | | |
| Dec. 3, 2024 | Mar. 17, 2025 | Aug. 3, 2025 | May 21, 2026 |
| $135 | $135 | $150 | $150 |

---

[33]https://web.archive.org/web/20241130064919/https://www.stevemadden.com/collections/womens-best-sellers-2, https://web.archive.org/web/20250513011237/https://www.stevemadden.com/collections/womens-sandals, https://web.archive.org/web/20250622183930/https://www.stevemadden.com/collections/womens-sandals , https://web.archive.org/web/20260202173350/https://www.stevemadden.com/collections/womens-sandals

[34]https://web.archive.org/web/20241128103318/https://www.stevemadden.com/collections/mens-sandals-slides, https://web.archive.org/web/20250329202638/https://www.stevemadden.com/collections/mens-sandals, https://web.archive.org/web/20250517160459/https://www.stevemadden.com/collections/mens-sandals, https://web.archive.org/web/20260209075018/https://www.stevemadden.com/collections/mens-sandals-slides

[35] https://web.archive.org/web/20241203074730/https://www.dolcevita.com/collections/shoes-heels, https://web.archive.org/web/20250317135950/https://www.dolcevita.com/collections/shoes-heels, https://web.archive.org/web/20250819055043/https://www.dolcevita.com/collections/shoes-heels, https://web.archive.org/web/20260521015403/https://www.dolcevita.com/collections/shoes-heels

[36] https://web.archive.org/web/20241203074730/https://www.dolcevita.com/collections/shoes-heels, https://web.archive.org/web/20250317135950/https://www.dolcevita.com/collections/shoes-heels, https://web.archive.org/web/20250803075950/https://www.dolcevita.com/collections/shoes-heels, https://web.archive.org/web/20260521015403/https://www.dolcevita.com/collections/shoes-heels

| Cleo Heels Dk Mesh[37] | | | |
|---|---|---|---|
| Dec. 3, 2024 | Mar. 17, 2025 | Aug. 3, 2025 | Mar. 11, 2026 |
| $100 | $100 | $110 | $110 |
| Pandor Heels White Tulle[38] | | | |
| Dec. 3, 2024 | Mar. 17, 2025 | Aug. 3, 2025 | May 21, 2026 |
| $140 | $140 | $160 | $160 |

44.    The historical price of each example product increases contemporaneous with the imposition of the Subject Tariffs and consistent with Steve Madden's statements that it would increase prices in response to tariffs.

45.    Steve Madden applied Tariff Costs like those in the above examples across its products and caused Steve Madden's consumers to pay a higher price for those products. This is especially the case because Steve Madden, as manufacturer, importer, and retailer, has control over every aspect of the pricing for its products.

46.    Plaintiff and each member of the Class purchased one or more of Steve Madden's products through its retail and e-commerce outlets after the Subject Tariffs were imposed. At that time, Plaintiff and the Class paid Tariff Costs to Steve Madden.

47.    As a direct result of Steve Madden's Tariff Costs, Plaintiff and Class members paid more for Steve Madden goods than they would have absent unlawful Subject Tariffs.

---

[37] https://web.archive.org/web/20241203074730/https://www.dolcevita.com/collections/shoes-heels, https://web.archive.org/web/20250317135950/https://www.dolcevita.com/collections/shoes-heels, https://web.archive.org/web/20250803075950/https://www.dolcevita.com/collections/shoes-heels, https://web.archive.org/web/20260311121922/https://www.dolcevita.com/collections/shoes-heels

[38] https://web.archive.org/web/20241203074730/https://www.dolcevita.com/collections/shoes-heels, https://web.archive.org/web/20250317135950/https://www.dolcevita.com/collections/shoes-heels, https://web.archive.org/web/20250803075950/https://www.dolcevita.com/collections/shoes-heels, https://web.archive.org/web/20260521015445/https://www.dolcevita.com/collections/shoes-heels

### III.    Steve Madden seeks refunds for duties paid.

48.    In April 2025, several companies sued in the Court of International Trade challenging the legality of President Trump's executive orders and the resulting tariffs ("Challenged Tariff Orders").[39] That Court held the Challenged Tariff Orders were unlawful because they exceeded the President's authority under the IEEPA, granted declaratory relief that the Challenged orders were invalid as contrary to law, and issued a universal permanent injunction enjoining enforcement of the tariffs.

49.    The Federal Circuit affirmed the Court of International Trade's determination regarding the unlawfulness of the Challenged Tariff Orders and grant of declaratory relief, but vacated the universal injunction *en banc*.[40]

50.    The Federal Circuit stayed its decision pending the Government's petition for a writ of certiorari and the Supreme Court's subsequent decision.[41] The Supreme Court granted certiorari and heard oral argument in *V.O.S. Selections, et al. v. Trump*, on November 5, 2025.

51.    Following the Federal Circuit's decision, on December 19, 2025, Steve Madden sued U.S. Customs and Border Protection in the Court of International Trade seeking to enjoin the federal government from enforcing the Challenged Tariff Orders and the order refunding all unlawful duties collected from Steve Madden.[42]

---

[39] See Complaint, *V.O.S. Selections, et al. v. Trump, et al.*, No. 25-cv-00066 (Ct. Int'l Trade Apr. 14, 2025), Dkt. No. 2.

[40] *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1347 (Fed. Cir. 2025), *cert. granted*, 146 S. Ct. 73, 222 L. Ed. 2d 1231 (2025).

[41] Order, *V.O.S. Selections*, 149 F.4th at 1347 (Aug. 29, 2025), Dkt. No. 161.

[42] Complaint at 11-12, *Steve Madden*, *supra* note 6.

52.     Just as with the Plaintiffs in *V.O.S. Selections*, Steve Madden asserts the Challenged Tariff Orders are unlawful and seeks a court order requiring the Government to provide them with "a full refund of all IEEPA tariffs paid, whether previously paid or collected in the future."[43]

53.     In its complaint, Steve Madden makes no mention of the consumers, including Plaintiff and the Class members, who bore the burden of the Subject Tariffs through Tariff Costs implemented by Steve Madden as discussed above.

54.     Nor has Steve Madden stated its intention to return Tariff Costs to consumers if it is issued a refund. In contrast, other companies like FedEx have made such assurances to consumers stating that "if refunds are issued to FedEx, we will issue refunds to the shippers and consumers who originally bore those charges."[44]

55.     On December 23, 2025, following consolidation with similar cases, the Court of International Trade stayed Steve Madden's case pending the Supreme Court's decision in *V.O.S. Selections*.[45]

56.     On February 20, 2026, the Supreme Court of the United States held that the Subject Tariffs are unlawful because the imposition of such tariffs exceeds President's authority under the IEEPA. *Learning Res.*, 146 S.Ct. 628. And as Justice Kavanaugh noted in his dissent, "the interim effects of the Court's decision could be substantial," including requiring the United States to "refund billions of dollars to importers who paid the [subject] tariffs, even though some importers may have already passed on costs to consumers or other." *Learning Res., Inc. v. Trump*, 146 S.Ct. at 691 (Kavanaugh, J., dissenting).

---

[43] *Id.*

[44] Navigating U.S. Tariffs and Customs Regulations, FedEx, https://www.fedex.com/en-us/shipping/international/us-tariffs-impact.html (last visited Jun. 10, 2026).

[45] Text Entry, *Steven Madden, Ltd. et al v. U.S. Customs and Border Protection et al.*, No. 1:25-cv-00793 (Dec. 23, 2025), Dkt. No. 17.

57.     Thereafter, on April 20, 2026, the CBP launched the first phase of the Consolidated Administration and Processing of Entries ("CAPE") tool within the Automated Commercial Environment Secure Data Portal (ACE Portal), which allows for the processing of tariff refunds.[46]

58.     Under the refund mechanism put in place after the Subject Tariffs were determined to be unlawful, the importer holds the sole legal right to seek reimbursement from the government for an unlawfully collected tariff.

59.     In contrast, the consumers who ultimately paid these unlawful tariffs, like Plaintiff and proposed Class members, have no remedy before the CIT or through CAPE to pursue and collect a refund for the illegal tariffs they paid.

60.     As Justice Kavanaugh anticipated, Steve Madden seeks a refund for tariff payments it has already passed on to consumers. To the extent that Steve Madden is entitled to a refund for its payments of the Subject Tariffs, Plaintiff and the Class are entitled to restitution of the Tariff Costs Steve Madden charged them at the time of their purchases. If Steve Madden retains the refund of tariffs that it did not ultimately bear the full expense of in the first place, and which were instead borne by consumers, Steve Madden will receive an unjust windfall of funds that rightfully belong to Plaintiff and the Class.

61.     If Plaintiff and the Class had known that Steve Madden would unfairly retain the Tariff Costs for the Subject Tariffs Steve Madden then argued were unlawful, they would not have purchased or would have paid less for Steve Madden's products.

---

[46] U.S. Customs and Border Protection, CSMS #68315804 Consolidation Administration and Processing of Entries (CAPE) for IEEPA Refunds, Apr. 20, 2026, https://content.govdelivery.com/accounts/USDHSCBP/bulletins/4126a9c.

## CLASS ACTION ALLEGATIONS

62.     Plaintiff brings this action on behalf of themselves and on behalf of all others similarly situated (the "Nationwide Class") as a class action pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3), and (c)(4).

63.     The Nationwide Class is initially defined as follows:

> All individuals who purchased a Steve Madden product through Steve Madden's retail or e-commerce outlets within the Class Period.

64.     The Class Period begins on February 1, 2025, up to the date this action was commenced and continues through the present and the date of judgement. Plaintiff reserves the right to amend or modify the class definition(s) with greater specificity, by further division into subclasses, and/or by limitation to particular issues. As described below, the Class satisfies the elements of Fed. R. Civ. P. 23(a) and Rule 23(b).

65.     **Numerosity**. The Class members are so numerous that joinder of each individual Class member would be impracticable and unfeasible. The Class consists of at least thousands of Steve Madden customers who made purchases during the Class Period. The customers included in the Class are ascertainable, as the identities can be determined by appropriate discovery. The precise number of Class members, and their addresses, are unknown to Plaintiff at this time but can be ascertained from Defendant's records. The Class is, however, so large that Class members cannot be consolidated in one complaint and it would be impractical for each to bring suit individually. Plaintiff does not anticipate any difficulties in the management of the action as a class action.

66.     **Commonality and Predominance.** There is a well-defined community of interest among the Class members and common questions of both law and fact predominate over questions

affecting individual members. These common legal and factual questions include, but are not limited to, the following:

1)      Whether Defendants passed on tariff-related charges onto customers;

2)      Whether consumers paid increased prices for Defendants' products attributable to the cost of tariffs;

3)      The amount to which consumers paid for the costs of tariffs;

4)      Whether Defendants' retention of tariff refunds is unjust without payment;

5)      Whether Defendants acted unfairly or deceptively by charging consumers for tariff-related costs and then retaining any reimbursements of those tariff charges;

67.      Whether Plaintiff and the Class members are entitled to equitable relief, including, but not limited to, restitution as requested in this Complaint;

6)      Whether Defendants' conduct has harmed Plaintiff and the Class uniformly; and

7)      Whether declaratory relief would afform uniform benefits to the Class.

68.      **Typicality.** Plaintiff's claims are typical of those of the Class members in that they arise out of the same course of wrongful conduct committed by Defendants, including its inequitable retention of tariff refunds which rightfully belong to Plaintiff and Class members. Plaintiff and Class members have experienced the same harm, including loss of a uniform Tariff Cost on their purchases. The effort Plaintiff undertakes to pursue their own claims will significantly benefit the Class members because of the identical nature of the issues across the Class.

69.     **Adequacy of Representation.** Plaintiff will continue to fairly and adequately represent and protect the interests of the members of the Class. Plaintiff shares a common interest with the Class members, with respect to the conduct of the Defendants herein and redress of injury. Plaintiff has suffered an injury-in-fact because of the conduct of the Defendants, as alleged herein. Plaintiff has retained counsel who are competent and experienced in the prosecution of complex class actions. Plaintiff and their counsel intend to prosecute this action vigorously and faithfully for the benefit of the Class members. Plaintiff and Plaintiff's counsel have no interests contrary to the Class members and will fairly and adequately protect the interests of the Class.

70.     **Superiority of a Class Action (Fed. R. Civ. P. 23(b)(3)).** A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and Class members. There is no special interest in Class members individually controlling the prosecution of separate actions. The damages suffered by individual Class members, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. Further, it would be virtually impossible for the Class members individually to redress effectively the wrongs done to them. And, even if Class members themselves could afford such individual litigation; the court system could not, given the tens or even hundreds of thousands of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

71.    **Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)).** In the alternative, this action may properly be maintained as a class action, because:

    a.  the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendants; or

    b.  the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual Class members which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

    c.  Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Classes as a whole.

### CLAIMS FOR RELIEF

### COUNT I
### Money Had and Received
### (On Behalf of Plaintiff and Nationwide Class)

72.    Plaintiff incorporates by reference the facts alleged above.

73.    Plaintiff alleges this claim individually and on behalf of the proposed class.

74.    Defendants received money from Plaintiff and from each member of the proposed Class in the form of a Tariff Cost. The Supreme Court has determined that the tariffs were unlawful.

75.    The money belonged to Plaintiff and to each member of the proposed Class.

76.    Defendants have not returned the money.

77.    It will give offense to equity and good conscience if Defendants are permitted to retain the Tariff Costs. Plaintiff seeks the return of the money in an amount to be proven at trial.

78.    Plaintiff seeks all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and injunctive relief, and other remedies available to him.

### COUNT II
### Unjust Enrichment
### (On Behalf of Plaintiff and Nationwide Class)

79.    Plaintiff incorporates by reference the facts alleged above.

80.    Plaintiff alleges this claim individually and on behalf of the proposed class.

81.    As described herein, Defendants charged Plaintiff and each member of the proposed class Tariff Costs when they purchased Defendants' products. By collecting these Tariff Costs, Defendants received and knowingly and willingly accepted a direct benefit at Plaintiff and the members of the proposed Class's expense. The Supreme Court has determined that the tariffs were unlawful.

82.    It would be unjust for Defendants to retain Tariff Costs to cover the expense of the Subject Tariffs when Defendants are entitled to a refund for the Subject Tariffs paid.

83.    Defendants' unjust conduct was the proximate cause, and a substantial factor, in causing Plaintiff and the members of the proposed Class's losses and damages.

84.    Plaintiff seeks the return of the Tariff Costs in an amount to be proven at trial.

### COUNT III
### Declaratory Relief, 28 U.S.C. § 2201
### (On Behalf of Plaintiff and Nationwide Class)

85.    Plaintiff incorporates by reference the facts alleged above.

86.    Plaintiff alleges this claim individually and on behalf of the proposed Class.

87.    Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

88.    Plaintiff's claims present an actual controversy as to the rightful ownership of the Tariff Costs paid to Defendant.

89.    Plaintiff has suffered an injury by having been required to pay Defendants a Tariff Cost because of the Subject Tariffs on Defendant's product. And Plaintiff will imminently suffer an injury by Defendant's unlawful retention of the tariff refund.

90.    This Court can exercise its equitable power to enter a declaratory judgment that retention of the Tariff Costs paid by Plaintiff but refunded to Defendants is unlawful for any of the above reasons.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated, respectfully requests that the Court enter an order:

a.    Certifying the Class as requested herein;

b.    Appointing Plaintiff as Class Representative and undersigned counsel as Class Counsel;

c.    Finding that Defendants engaged in the unlawful conduct as alleged herein;

d.    Granting permanent injunctive relief to prohibit and prevent Defendants from continuing to engage in the unlawful acts, omissions, and practices described herein;

e.  Awarding Plaintiff and Class members compensatory, consequential, and general damages, including nominal damages as appropriate, for each count as allowed by law in an amount to be determined at trial;

f.  Granting the declaratory relief sought herein;

g.  Ordering disgorgement and restitution of all profits received or retained by Defendants as a result of their unfair acts, omissions, and practices;

h.  Awarding to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses; and

i.  That the Court grant such other relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a jury trial.

Dated: August 3, 2026                    By: */s/ Raphael Janove*
                                         Raphael Janove

                                         Raphael Janove
                                         **JANOVE PLLC**
                                         115 Broadway, 5th Fl.
                                         New York, NY 10006
                                         Raphael@Janove.law

                                         *Attorney for Plaintiff and the Proposed Class*